May it please the court. I'd like to divide my opening presentation into three basic categories. What happened, why what happened violated the Constitution, and why qualified immunity is unequivocally shows a police officer shooting seven or eight times at an individual who posed no threat to anyone in a stationary vehicle. Why did this happen? This was a young man a 23 year old who with his friend decided to watch try to go to the all-star game in Los Angeles and when they came back they were out of money and found a car that was running and so they stole it. That is clearly a felony. It is not the right thing to do but it is something that immature 23 year olds might do. They had the misfortune of driving by officers Coburn and McHugh who described their driving as suspicious because and I quote they hit the brakes while they went by a police officer something I have done more than probably a thousand times in my life. In any event what's important about this is they get in they watch the two young men go to the gas station and they come upon them. They are unarmed, they're simply by their vehicle. They walk out of the convenience store and the police do not stop them. They do not say stop. They let them get to the car. One of the young men is going to pour gas, the other gets into the car. When did the police learn that the car had been stolen? The police learned that the car had been stolen after seeing the young men break the car, use the brake lights. They called it in and what's very important is they learned it was a non-violent car theft. That's one of the most significant mistakes that the district judge made in its ruling. The three criteria as the court well knows are the severity of the crime at issue, the immediacy of the threat and the seriousness of the threat. They knew before they went into the store that the car was stolen? They knew before they went into the store that the car was stolen? They could have simply said come with me and this never would have occurred. And then the third factor is were they actively resisting arrest or trying to evade arrest? The district judge said that categories one and three clearly favor the officers in this case. That's not really true because the severity of the threat was next to none for a non-violent car theft. Let me bring you back to what the officers knew. Wasn't there something in the record indicating that the two individuals had asked questions about an alternative route so as to avoid police stations or law enforcement? Or in other words, how to get back home off the beaten path? Perhaps. I mean, there's certainly an admissible hearsay that that may have occurred inside the store. But that doesn't change the fact that what was at issue here was a car theft. And I suppose the route that they would ultimately take, whether they chose highways or byways, I don't think that really is- But the focus is on what the officers knew at the time and how they acted with that information, whether it was constitutional or unconstitutional, and whether or not there was some type of authority for them to know that what they did was wrong. Isn't that our inquiry is to evaluate the totality of what the officers knew before we can consider what they did? Well, it's absolutely the totality of what they knew. And that is a correct fact as to something that was reported to them. But the more important fact, Judge Englehart, is that they knew that this was not a violent carjacking. If this were a violent carjacking, then they would have been justifiably able to proceed with a little bit more caution and a little bit more urgency. This was not. These were 20- To where we left off in your explanation of how this unfolds, they pull up. You said, well, they could have said, come with us. And you're certainly correct that that would have been one way. But they pull up in the SUV with lights flashing. And one of the gentlemen has the gasoline pump in his hand. Correct. And drops it and gets in the car. Why is that not a suspicious activity or an indication that they're going to flee? Well, I would respectfully say that I don't disagree that it's a potential indication that they're going to flee. He is not, however, the driver. And he is merely responding to the lights coming up. And that person, again, put his hands up when asked and gave no indication of posing any threat whatsoever. And I want to come to some of the commands. Because another part of the district judge's order were, look, these young men didn't follow instructions. Again, not really true. They were told to show me your hands. They did. The evidence in the record is that the passenger put his hands up like this. And the passenger's testimony is that the driver also showed his hands. That is, when you view the record in the light most favorable to the plaintiff, that is complying with the command. The only other command that was given, and it was immediately before Officer Coburn opened fire on these two boys, was you go forward. Is there audio of the dash cam footage? Not body cam footage. Is there audio of dash cam footage? Because some of your briefing seemed to cite audio of the dash cam footage. But I don't see it. There is audio of the dash cam footage. In the record? In the record. It is fainter than Officer McHugh's body cam. But there is. And in fact, that's R.O.A., or I'm sorry, Record on Appeal 807. At the 35 second mark of that, you can hear an officer shout, hands. Then you can't hear, let me see your hands. You have to then move to Officer McHugh's body cam. So what you have to do, and I don't pretend that it's easy, and we've been in the weeds on this, but you have to put the videos together to get what you can hear and see. What the dash cam footage is especially helpful for is it shows Officer Coburn trying to smash the window with the butt of his gun. Now, in the record, from a police practices expert, the conclusion from the police practices expert is that is reckless tactics. Now, why is that important? Because you're, again, measuring the totality of the circumstances, not just that face the officers, but that face the young men. Is there anything in the record, you mentioned about hands, show the hands, and the passenger stated, yes, we put our hands up. Now, the vehicle, as I understand it, had deep, dark, tinted windows. Is there anything in the record that shows, again, we're focused on what the officers saw at the time. Of course. Did they see that the hands were up? At some point, one of the officers goes to the front of the car. He does. Right? Which is also tactically reckless. Well, but tactically reckless isn't our standard at this point. Oh, no, no, and I don't pretend that it is. It just goes to the justification for why that young man turned the wheel and left. Here is what happened. Well, let me get back to my, I have two questions for you, because this is unfolding, and it's all, as you point out, it's all very important, what information the officers have, what observations they're making, so that we can evaluate their conduct. So you mentioned about trying to break the window, and I think we'll hear from your opponent. He's tapping. I saw him using the weapon. I watched the videotape, as I'm sure those of us involved have. Tapping the window. Open the window. Open the window. Except he doesn't say, open the window, open the window. Okay. All right. And then he goes to the front. So my question previously was, is there anything in the record, other than the passenger's testimony, that hands were up? If the officer saw the hands up, then it's a different case than if the officer didn't see the hands up and believes that the command's being disobeyed. Well, in order for the officer to have an opinion as to whether or not the command is being obeyed or disobeyed, he has to see it. Okay? The argument from my friend and opposing counsel is that they weren't complying. That's what the district judge said. All I'm telling you is there is evidence in the record that he did, in fact, show his hands. The windows were tinted, so I do not think Officer McHugh had a particularly good view of that. Or, and it happened before he went around to the front. So you could see in. And so there's nothing in the record about that. But, again, the important part about an instruction is that you give the person the opportunity to comply. And all I'm talking about here is that the record shows that he basically was compliant. The record shows that this wasn't a severe crime. The record shows that this young man was in a car, and while it posed no danger to anyone, while it was merely on, and it was not in gear, another officer illegally, and this is according to the district judge, fired eight bullets into the car. Now, by any stretch, that's a crime. Is it disputed which officer fired the fatal shot? It was Officer McHugh? It is unknown which officer fired the fatal shot. And you can look at Grand Staff. I believe there's a First Circuit case. The blue brief in footnote 27 says it was Officer McHugh who fired the fatal shot. That's incorrect. We do not know whether it's Officer McHugh or Officer Coburn. Because all we know is the fatal shot came from behind, and one of the most egregious errors that the district judge made was he said that once the car went past the officers, they stopped shooting. That is not true. So, question about that. So, watching the video footage, we see Officer Coburn running after the car. Yes. And then both Officer Coburn and the car are out of the frame. Yes. You say in your brief, quote, Coburn chased after the car and fired at least two more shots, unquote. Yes. And you can hear that. Record on appeal, 8.07, the dash cam at the 57 second mark. You can also hear those two shots on McHugh's body camera, record on appeal, 8.08, at the 14 second mark. Are we able to determine how long after Baker turned the car were those shots fired? Seven seconds. Seven seconds after the car was turned? Seven seconds after the car was turned. What is the record evidence for that? Well, you see that the car turns the record on appeal at 8.07 at 48 seconds. And you see that the second shots are actually at 57. So from the turning of the wheel, it's nine seconds. From the actual moving away, it's at least seven seconds. The judge just got that wrong. I think my opposing counsel... Let me ask you this, because I have a concern about when the firing started and when it stopped. So from the time the first shot was fired, which is when Coburn was in front of the vehicle? Yes. From the time the first shot was fired to the time the last shot was fired, how many seconds? Approximately 10 seconds. 10 to 11 seconds. And so, and this may be a concern only for me, because the first firing, when Coburn's in front of the car, it's not apparent that any of those shots hit anybody. Because what we have is a situation where we say that the two shots that resulted in the death were fired from behind. It is unlikely, although I will simply say that because the bullet went in from in the back, to the extent Mr. Baker was in the ducking process and ducked like this, it is possible. Was McHugh still firing as the car was driving away? Do we know? Yes, he was. McHugh fired through the back passenger window and the rear window. He was firing from behind. McHugh, if you watch on the video, and it's not that easy and I'm coming to the end, but you can see his weapon recoiling, record on appeal, 807, at 49 seconds, at 50 seconds, and there are four or five recoils. Both of the officers fired at Darian Baker from behind while the car was exiting. I'll talk about this more, I suppose, in rebuttal. Under established law, under Lytle, under Palacios, under Edwards, they make the law clear you can't do that. It may or may not be significant, and you tell me whether or not you think it is. It may or may not be significant that this could possibly be viewed as two episodes. The first episode occurs when the firing begins when Corbin's at the front of the vehicle. Then everything changes when the vehicle turns to get away from what's happening. The first episode is he's standing in front of the car firing shots into the car. The second episode, at least as I view it, is when the car is running away and he's chasing the car and still firing. Any significance at all that I'm dividing this into two episodes or I'm making much ado about nothing? No. My time is up. You may answer. Yes, Your Honor. You're exactly right to divide this up. The first episode is a car that poses no danger, that is merely on, that is not in gear with a young man who is facing a gun and is shot at seven or eight times and in the process of that happening ducks. The reason that first part is significant is not so much, although it's possible one of the shots hit him, it's not likely as the rear ones. But what's significant about that is when you're determining the clearly established nature of the second set of shots, the next seven shots, which you might divide up into five and two or three and four, the significance of that is what do you want a young man to do who is taking illegal gunfire as close as I am to you from a police officer who is essentially being gunned down. That's just the facts. What is he supposed to do? This is what he did. He ducked. He turned the wheel and miraculously went around the officer. I would respectfully say he didn't have to do that. But he did. Thank you, Your Honor. Thank you. Appellee. May it please the Court, Counsel. The question the Court has to decide today is in this circuit, is it clearly established or not that officers are entitled to use deadly force to stop a suspect from deploying a vehicle as a deadly weapon against an officer and potentially the public? The undisputed facts as shown by the video are that on February 21, 2018, officers McHugh and Coburn were attempting to arrest Darion Baker and Gregory Deese for car theft, which is a felony and is a dangerous crime, whether or not the car was taken with force to begin with. The officers pulled their vehicle in behind the stolen car. Mr. Deese is- You agree they didn't know anything more at the time they decided to make the arrest, which is after they were backed in the car. They hadn't learned any additional facts from what they knew when they were in the store, when they were coming out of the store. They hadn't learned anything else, had they, the officers? The facts they knew at the time were that the car had been stolen from Inglewood, California, and they had spoken to three witnesses inside the store that the young men were attempting to take the back roads and byways back to Memphis. Those are the facts as they knew them. And then once they were going to make the arrest is when it seemed to the officers that they were going to flee, because that's when Deese threw the gas pump on the ground and jumped in the car. And so the officers go around the vehicle, one on each side, covering up on the driver's side. So were they leaving the store as Deese and Baker? Yes, Your Honor. I may not have the names right, but were they leaving the store while the officers were still learning that they were looking to take the back roads back to Memphis? The exact- Is that when the officers learned that? I'm just trying to figure out why you wouldn't just arrest them as they're walking out of the store. And Your Honor, in hindsight, that may have been a better course of action, but we can't look at it with the benefit of 20-20 hindsight. I understand all that. Do you agree with me that we're talking about two episodes of the use of force? The first is when the officer's standing at the front of the car. And then the second episode is when the car is driving away. I do, Your Honor. All right. I do. And I think that it's important for the court that those final two shots that are fired, it's pure speculation- By whom? As the car's driving off, Coburn. By Coburn. Undisputed. Yes. Yes. It's pure speculation, though, that anyone other than McHugh fired the shots that hit Mr. Baker. And as this court has said in Petra v. Rivera in 1998, the fact that the bullet did not strike the plaintiff prevents the case from being a seizure under the Fourth Amendment. That case is cited again in the Mason v. City of Lafayette case that the plaintiffs cite. As the court well knows, the first element of an excessive force claim is injury. And so if those shots fired by Coburn as he's running away hit the car, as the plaintiffs concede on page 10 of their brief, and not Mr. Baker, those shots do not make that an excessive force claim. But I think that the court is correct to kind of divide that up because here those first barrage of shots are when the car is being deployed as a deadly weapon. Officer Coburn has come directly in front of that car. You were correct to say that he couldn't see in because of the darkly tinted windows and they were giving commands, let me see your hands. And so he can't see in and he goes around the front. And as he's at the side of the car, banging on the window with his gun, the car was not started. But you can see from the video evidence that as he starts to make his way up around and the undisputed evidence in the record is that about the time he's in front of the driver's side headlight, he hears the ignition turn over. Then both officers testified they heard the engine rev and then as Officer Coburn is in the middle of the car, he hears the car shift into gear and he fires seven shots. And then the car begins to move and Officer Coburn from the passenger back window waits until Mr. Deese, who has not done anything wrong and who does have his hands up, is out of the line of his fire and he fires five shots, two of which strike Mr. Baker in an attempt to save his partner's life. Officer Coburn continued to pursue the vehicle and fired two more shots until it became apparent that the threat had ended. Who fired the shots in an attempt to save the partner's life? Which one are you saying fired those shots? McHugh, from the passenger side of the vehicle. And again, you're saying McHugh, in fact, fired the fatal shot. Opposing counsel seem to not agree with that. It is pure speculation. The only evidence in the record that is clear on it is from Officer McHugh, who says that from the angle and from where he was that it had to have been his shots. Plaintiff's expert has some speculation and says that perhaps there's some sort of ducking and turning. That's pure speculation. The evidence in the record is that the shots were fired by McHugh. A few minutes ago you talked about, you kind of distinguished between kind of the first barrage of shots and the later barrage of shots and you say in your brief that, and you just said it a few seconds ago, that the officers fired, quote, until the threat to Coburn and the public ended, unquote. So focusing on the later, the second barrage of shots, did any officer fire any shots at the back of the vehicle more than two or three seconds after the car cleared Officer Coburn? So do you mean as the car goes off, in the video, as the car turns and goes out of what's visible? Talk about, so the car clears, misses Officer Coburn, so there's no longer a threat of the car striking Officer Coburn, but did either officer fire any shots at the back of the vehicle more than two or three seconds after the car cleared Officer Coburn? The shots that Officer Coburn fired into the back of the car were more than two or three seconds. Yes, Your Honor. But the plume... Is that the... When we talk about two sets of shots, I want to make sure that we're on the same page and Judge Graves had asked both counsel about this. What do you consider, from your point of view, to be the first and the second? How many in the second? How many shots? Is it just the two? Yes, Your Honor. And what I'm talking about being the first set of shots are the seven or eight shots fired by Officer Coburn from in front of the car and the five shots fired by Officer McHugh from the back passenger, back window of the car. Right. Those that are just right there within a second, second and a half of each other. All of those are the first barrage and then the two. Yes, and then the two, though, the Blumhoff case says, it stands to reason that if officers are justified in firing at a suspect in order to end a severe threat to the public safety, the officers need not stop shooting until the threat has ended. Once Officer Coburn was convinced that the car was disabled, he stopped shooting. Those two shots, though they didn't hit Mr. Baker, were still fired when Officer Coburn, he had not reasonably perceived the threat was over yet. Okay, so it's your view that the threat has not ended until the car is disabled. Correct. Even if the car has cleared the officers and is getting away, the threat is still alive until that car is brought to a stop. That's correct, Your Honor, because this was a busy street. Two highways intersect right there in Stratford. You can see from the video there is traffic, there are customers in the store, there are pedestrians around in the parking lot. And so after Mr. Baker nearly ran over Officer Coburn, he engaged in very serious crimes and the threat to the public was not over until that car had been disabled, which is when the shooting stopped. In the Marlboro v. Shelley case... I just want to clarify. So just say the car is headed away, the car has cleared the officers, the car is getting away, the car is headed away, but you say the threat is still alive. That justifies continued shooting after the fleeing car. Yes, Your Honor, because of the members of the public and the people in the traffic. In the Lytle case that every excessive force plaintiff loves to talk about, even in that case, when the court found a material fact issue as to whether or not the shots were fired right up close to the officer or three to five houses away, there's no question that Coburn shots were fired well within the distance of three to five houses. They're fired within just a few feet from the initial barrage of shots. So even if the Lytle case, which allows three to five houses to be a material fact issue, because we don't have that issue here, we're all still right there where it happened with public members all around. If Baker had made it to the highway and begun a high-speed chase, would the officers have been permitted to use deadly force and keep firing? Because the threat was still alive to other people. Yes, Your Honor, I think that's what the Blumhof case says, is that until the threat if the officers were ever entitled to use deadly force, they are entitled to use deadly force until the threat is over. The City of Tahlequah v. Bond case is a new per curiam case out of the U.S. Supreme Court and in that case the officers fired at a suspect six feet away who was holding a hammer up like he was going to throw it at them like a baseball bat. He hadn't thrown it at them. He was just holding it up like this. And the Supreme Court found that those officers were entitled to qualified immunity. Certainly in this case where a vehicle is within inches of Officer Coburn those officers are at least entitled to qualified immunity for using force. As the court well knows The first episode is because the officer was threatened and then you agree with me we're talking two episodes and the second one you say is the threat to the general public. Yes your honor. Because at that point Mr. Baker had used a deadly weapon the vehicle against Officer Coburn. Officer Coburn is right in front of that car. Nothing happened to Officer Coburn as a result of the vehicle. Fortunately he was able to get out of the way. Well I guess there's two ways to look at that. I could argue that they weren't trying to hit the officer they were trying to get away. You're saying fortunately he was able to get out of the way. Maybe it's fortunate they weren't trying to run over him. Your honor the court is required to look at what happened from the perspective of a reasonable officer on the scene. From Officer Coburn's perspective when he's staring at a car coming right at him from his perspective it is reasonable to believe that that car was being deployed as a deadly weapon against him and that if the car would be used against him it may be used against the public in the same way. So if I determine that he's entitled to qualified immunity for episode one that doesn't necessarily mean he's entitled to qualified immunity for episode two does it? Well under the Plumoff case yes your honor because until the threat ended he was entitled to continue using force and the Supreme Court has said that even if he's made a mistake of fact or law the Pearson case says that qualified immunity protects him. Y'all hear it quoted up here all the time but qualified immunity protects all but the plainly incompetent. That it forbids Monday morning quarterbacking and we can't look at it from the benefit of 20-20 hindsight. The court has said that the two factors to determine reasonableness are the limited time the officer has to respond and the closest of the officer to the projected path of the vehicle. Now of course when he's right in front of it that's easy but the limited time he has to respond is what matters for the other shots because he has a limited time to decide how am I going to protect the members of the public that are here on foot and in car and because he had already been entitled to use force the Plumoff case says he was entitled to continue using force until the threat was over. Which case is it that defines threat as to the public as opposed to to the officers? The Plumoff case itself says that if if force is justified to end a threat the officers need not stop shooting until the threat has ended. Okay. Okay well because I again your sort of conception of threat is to the public generally not to the officers that are in kind of the kind of the franticness of that moment but as I look at LIDL if officers have some time to register that the threat however defined had passed if the car was already heading away from them was a good distance away then continued shooting was no longer justified. Your honor the Graham case though says that reason that use of deadly force is presumed reasonable when the officer has reason to believe the suspect poses threat of serious harm to officers or others. So both the threat to Coburn and then the threat to others as as Mr. Baker has just in Officer Coburn's reasonable belief used that car as deadly weapon against him. And again the shots that Coburn fired in the second if we're going to call it the second incident those shots did not strike Mr. Baker and so those cannot raise an excessive force cause of action. When we talk about cases that have two sets of shots the plaintiffs point to several cases and I'll point out an interesting thing that was in the City of Tahlequah v. Bond case that the Supreme Court recently said to state the obvious a decision where the court did not even have jurisdiction cannot establish cannot clearly establish substantive constitutional law. So a bunch of the cases that the plaintiffs cite are cases where this court has dismissed the appeal for lack of jurisdiction and yet the plaintiffs rely on them as clearly established law when the Supreme Court has said that you can't do that if you don't have jurisdiction. But even still let's talk about the Rock v. Harkwell case. That's a case where officers fire three shots at a suicidal man. The first shot was fired while the man was waving a gun. After the first shot the man drops his gun stumbles and goes away from officers and bystanders. And this court held that shots two and three were fired when there was no they were unreasonable or at least a jury could determine so because the threat had ended. But clearly different in this case though the suspect in Rock v. Harkwell had dropped his weapon Mr. Baker never abandoned his weapon which was the vehicle. The same thing for the Mason v. Lafayette case seven shots shots one through five fired while the suspect was reaching for the gun shots six and seven fired while the suspect is face down on the ground clearly disabled. The court said shots one through five no doubt qualified immunity shots six and seven we need to let a jury decide is that reasonable? And again here when the car was disabled when it was no longer accelerating forward but was just rolling the officer stopped shooting. Counsel you've relied heavily on Plum Hall but in Plum Hall under the facts in that case we had a high speed chase and then the cops cornered the suspect in that case. Isn't that what happened in Plum Hall? Yes your honor but once the car had come to a stop then it's just analyzing it shot by shot. You had somebody who had already engaged the police in a high speed chase that's not what you had here. No your honor but in this case the officer Coburn had stood directly in front of the car when it came in his reasonable perspective right at him and so it was a very threatening situation in Coburn's reasonable view. And to me that's episode one. Yes your honor and then after that had happened which was a much more dangerous crime if we're going to talk about car theft and nearly running over an officer Plum Hall we already had a dangerous high speed chase not so here. That's the only point I make. Go ahead. Plaintiffs also bring up Flores versus City of Palacios That's the case where a 16 year old girl was visiting her aunt and her crime was parking on the wrong side of the road and then as she made her way back into the correct lane of traffic an officer believed that she came too close, that her vehicle came too close to him and so he initiates a stop and ends up firing shots into her vehicle. She didn't even know there was a stop attempted until the shot struck her vehicle and plaintiffs say that that is the same and they talk about shots from the back but that's different than here when the crime the initial stop involved a felony which then escalated when Mr. Baker flees and drives his car at Coburn As to the second shots How close was he to the car? Do you know? How close was The officer to the car when he fired the shots How close was he to the car? His testimony was 6 inches In front of the car And you think if somebody was trying to run him over and he was 6 inches from the car they couldn't get him Now I'm sorry You think if they were trying to run him over and he was 6 inches from the car they wouldn't have been able to run him over From his perspective your honor he thought he was going to be run over and from the perspective of his partner, his partner thought that officer Coburn was going to be run over So from where he was it was reasonable for him to believe that Well I understand what you're saying he thought but to conclude that that the driver was trying to run him over is to say something different which to me means we got a question of fact about that if you're going to make an issue of that because your contention seems to be that it was the intent of the driver to run him over I see that my time has expired can I please respond You may This case comes here on summary judgment and so I think at this point we have to concede that Mr. Baker was trying to go away but what the question is is what a reasonable officer on the scene would have perceived at that time Thank you ma'am Thank you A number of things First off my opposing counsel said that the car was being deployed as a deadly weapon. The facts when they're viewed in the light most favorable to the plaintiffs do not support that ever. The first eight shots the car is on that's it unless this court is prepared to hold that every DWI suspect who is not told to turn off a car may be shot for not obeying an order that would be the effect again if it was significant where was the command to turn off the car where was the command stop where was the command get out what happened in the first volley is that an officer shot into a car from someone who posed no danger it doesn't matter that the officer says I thought I was afraid. The officer here has said I shot him because he was reaching for a weapon the officer has also said I shot him because the car moved two feet into me. That's what officer McHugh said as well. Now we know that's wrong because of the video evidence but that's what he said so without the video there would be a plain material fact issue as to what happened. With the video we happen to know that the plaintiff was trying to avoid the officer and was the victim of being shot baselessly so the suggestion that at any point here and this distinguishes it from all the other cases Plum Hall let alone the high speed chase aspect of it here the car was never used as a weapon. It was merely used as a means to escape being killed. Now the real important point though here is the second set of shots because those are the shots that the evidence shows likely killed Darian Baker. There is three seconds between the car turning and those first shots being fired from officer McHugh he shoots into the back of the vehicle he shoots Darian Baker in the back I'll ask you the same question when you say the second set we're talking about the two is that correct? No sir we're talking about once the wheel turns and he is no longer in your argument there are seven second sets of shots sir. You may divide those up into two and five if you'd like to I don't. I think the important thing is does the is there an immediate threat to the officer objectively there isn't objectively the wheel is turned Coburn sees it and it goes to the left I thought in your opening argument that you agreed with Judge Graves that there were two sets of shots. There are two sets of shots tell me how many are in one and how many are in the other there are eight shots and that is what the evidence shows on the video tape there are eight shots that officer Coburn fires into the car thankful he misses. Miraculously Darian Baker then turns the wheel let's stay with the eight shots are those first group or some in the first group and some in the second group those are the first group I'm sorry those are the shots that officer Coburn fired at while the car was stationary and under Baker v. Putnell the first group let's get to the second group the car is pulling away the car is out of the path of the officer there are seven shots over nine seconds bang bang bang bang officer Coburn officer McHugh then runs to his squad car and then we see two more shots those two shots are very possibly the kill shots under no stretch was any member of the public in danger at that point it is simply not credible that is Lytle to a T in Lytle there was actively trying to harm an officer a high speed chase and then the car went went away and the police officer shot into it and this court said crystal in no uncertain terms that's a clearly established violation there is a constitutional violation here under all of the cases the real issue and I think is is it clearly established and judge will it I think you put it well in the Roque case at some point the rope of reasonableness ends and it is a mistake to confuse what Lytle truly hold Lytle is not a case that when a car gets forty feet away you can shoot Lytle is a case that expressly held once the serious danger is gone you can't shoot somebody in the back thank you counsel the court will take this matter under advisement